UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
TYRONE SPENCE,                    :
   plaintiff,                     :
                                  :
        v.                        :   case no. 3:19cv392(AVC)
                                  :
WARDEN CORCELLA, ET AL.,          :
   defendants.                    :
```

**<u>RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

The plaintiff, Tyrone Spence, is currently incarcerated at Corrigan-Radgowski Correctional Institution.  He commenced this action by filing a civil rights complaint against the defendants, warden Anthony Corcella and captain Hughes, alleging that on August 17, 2018, Hughes used excessive force to remove Spence from his cell and that Corcella sanctioned the use of force.  On June 10, 2019, the court concluded that the Eighth Amendment excessive force claims would proceed against Hughes and Corcella, in their individual capacities.

Hughes and Corcella have moved for summary judgment.  For the reasons set forth below, the motion is granted.

**FACTS**

The defendants' local rule 56(a)1 statement, and the evidence filed in support of that statement,[1] disclose the following undisputed material facts.[2]

---

[1] Such evidence includes the Hughes declaration, Corcella's declaration, Correctional Officer Ragunauth's declaration and the exhibits filed in support thereof, and the videotape of the August 17, 2018 incident.

On August 17, 2018, Hughes was employed as a correctional captain at Garner and Corcella was employed as the warden at Garner.  Spence was housed in cell 211, in H Unit.  Inmates classified to administrative segregation status are housed at Northern Correctional Institution or MacDougall-Walker Correctional Institution, during their confinement in the administrative segregation program.  Although Spence had been placed on administrative segregation status prior to August 17, 2018, prison officials had transferred him to Garner because his mental health needs and assigned mental health score required that he receive treatment at that facility.

At approximately 12:00 noon on August 17, 2018, Hughes learned from a mental health provider that Spence's mental health score had been modified and that he no longer required

---

[2] Local rule 56(a)2 requires the party opposing a motion for summary judgment to file a local rule 56(a)2 statement which contains separately numbered paragraphs corresponding to the paragraphs in the local rule 56(a)1 statement filed by the moving party.  The opposing party must indicate whether he or she admits or denies the facts, and/or objects to the facts as permitted by Fed. R. Civ. P. 56(c), that are set forth in each paragraph.  See Local Rule 56(a)2(i).  Furthermore, "each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."  Local Rule 56(a)3.  The defendants notified Spence of his obligation to respond to the motion for summary judgment and the court permitted Spence additional time to file his response.  See ECF Nos. 20-7, 26.  Spence has not filed any opposition to the motion for summary judgment.  Because Spence did not file a Local Rule 56(a)2 Statement in opposition to the defendants' Local Rule 56(a)1 Statement, the facts, which are asserted in the Local Rule 56(a)1 Statement and that have evidentiary support, are deemed admitted.  See Local Rule 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion)

treatment at Garner.  Based on this information, Hughes prepared to transfer Spence to MacDougall-Walker Correctional Institution, to continue his participation in the administrative segregation program.

Prior to August 17, 2018, Spence had advised Hughes that he would be unhappy if prison officials decided to transfer him from Garner and that he would make it difficult for prison officials to effectuate his transfer to another facility. Because Hughes expected that Spence would not willingly cooperate in his transfer from Garner, Hughes removed Spence's cellmate from the cell prior to confronting Spence about the transfer order.

Upon his arrival at Spence's cell, Hughes informed Spence that he would be transferred that day to another facility and asked him to place his wrists through the trap in the cell door to be handcuffed.  Spence stated that he would be "going all the way with this one," he would not go easily and that correctional staff members would have to enter his cell and forcefully remove him.  At that time, Spence tried to cover his face with a shirt in anticipation of being sprayed with a chemical agent.  Because Spence had refused to comply with Hughes' order to place his

unless controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule. . . .").

hands in the trap in the cell door to be handcuffed, and in an
attempt to avoid further escalation of the situation, Hughes
deployed a single burst of Oleoresin Capsicum Z-305l chemical
agent through the trap in the cell door towards Spence's facial
area.  The chemical agent appeared to only partially enter
Spence's cell and rebounded off the trap in the cell door and
into the hallway causing several officers in the hallway to
cough and sneeze.  Spence then complied with Hughes' orders by
packing up his property and placing his wrists in the trap in
the cell door to be handcuffed.

Officers removed Spence from the cell and escorted him to a
shower area to be decontaminated from the effects of the
chemical agent.  Upon his arrival at the shower area, Spence
declined to be decontaminated because none of the chemical agent
had reached his face.  Officers then escorted Spence to a room
in the admitting and processing area, strip-searched him,
dressed him in new underclothes and a jumpsuit, and applied
handcuffs to his wrists, shackles to his ankles and a belly
chain around his waist.

Prior to his placement in the prison van for transport to
the new facility, Spence spoke to a mental health provider and
stated that he should have been notified that a decision had
been made to transfer him from Garner.  He suggested that if a

4

medical staff member had notified him before Hughes arrived at his cell to prepare him to be transferred, he would not have flipped out and Hughes would not have needed to spray him with a chemical agent.

On August 17, 2018, Hughes was supervised by Corcella and two deputy wardens at Garner.  Four administrators, including a district administrator, two deputy commissioners of correction and the commissioner of correction, were also responsible for supervising Hughes, but were not present at Garner on that day.

Prior to August 17, 2018, Corcella had not instructed Hughes on the use of a chemical agent.  On August 17, 2018, Hughes did not discuss the change in Spence's mental health score, the decision to transfer Spence from Garner, or the steps to be taken to effectuate Spence's transfer, with Corcella. Hughes did not inform Spence that Corcella had instructed him to deploy a chemical agent into Spence's cell.  Spence's only complaint regarding the effects of the chemical agent by Captain Hughes was that the chemical agent residue remained on his property items for two weeks and that it would "activate" each time he touched the items.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view all inferences and ambiguities "in a light most favorable to the nonmoving party." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991). The nonmoving party cannot, however, "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).

In deciding a motion for summary judgment, the court may not "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Proctor v. LeClaire, 846 F.3d 597, 607-08 (2d Cir. 2017) (internal quotation marks and citations omitted). The moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of

material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 323).

"A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "'Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant, 923 F.2d at 982).

The court reads pro se papers liberally and interprets them "'to raise the strongest arguments they suggest.'" Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, "unsupported allegations do not create a material issue of fact" and are insufficient to oppose a properly supported motion for summary judgment. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

## DISCUSSION

Hughes argues that he did not use excessive force against Spence in violation of the Eighth Amendment. Corcella argues that Spence has failed to demonstrate his personal involvement in the use of force by Hughes. In the alternative, Hughes

7

argues that he is entitled to qualified immunity.

## I.   **Corcella - Personal Involvement**

Corcella states that although he was on duty as the warden at Garner on August 17, 2018, he was not aware of or involved in the use of a chemical agent by Hughes.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity, must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  To demonstrate personal involvement, a plaintiff is required to plead that:

> 1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[3]  Accordingly, a government or prison official is not

---

[3] The second circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon, for establishing supervisory liability.  See Lombardo v. Graham, No. 19-1535-PR, 2020 WL 1909581, at *2 (2d Cir. Apr. 20, 2020) (summary order) ("Although we have observed that Iqbal may have heightened the requirements for supervisory liability by

personally involved in a constitutional violation simply because

he or she was the supervisor of other defendants who may have

violated the plaintiff's constitutional rights.  See Raspardo v.

Carlone, 770 F.3d 97, 116 (2d Cir. 2014) ("Liability for

supervisory government officials cannot be premised on a theory

of respondeat superior because § 1983 requires individual,

personalized liability on the part of each government defendant")

(citation omitted).  Once a plaintiff properly alleges that a

defendant was personally involved in a constitutional

deprivation, he or she "must also establish that the supervisor's

actions were the proximate cause of the plaintiff's

constitutional deprivation."  Id.

Corcella has filed a declaration stating that on August 17,

2018, he was working as the warden at Garner.  As the warden, he

was responsible for supervising lower level employees at Garner,

including Hughes.  Hughes was also supervised by the two deputy

wardens who worked at Garner and four administrators who did not

work at Garner, including a district administrator, two deputy

commissioners of correction and the commissioner of correction.

Corcella states that at no time did he instruct Hughes to use a

chemical agent on Spence on August 17, 2018.

---

requiring more direct personal involvement, we need not decide that issue
where, as here, the allegations are also insufficient to state a claim
under Colon.") (citing Grullon, 720 F.3d at 139). For purposes of this

Hughes has filed a declaration stating that on August 17, 2018, three individuals supervised him at Garner, including Corcella and two deputy wardens and that multiple administrators, who were not present at Garner on that date, were also responsible for his supervision.  Hughes states that he did not discuss with Corcella the decision by mental health providers at Garner to lower Spence's mental health score or the decision to transfer Spence to another prison facility from Garner, on August 17, 2018.  Nor did Hughes discuss the procedures that he would follow to prepare Spence for transfer from Garner.  Hughes did not receive an instruction from Corcella to use a chemical agent against Spence.

Spence has failed to submit any evidence to contradict the declarations of Hughes and Corcella regarding Corcella's lack of awareness of or personal involvement in Hughes's decision, on August 17, 2018, to use a chemical agent on Spence, prior to removing him from his cell.  Corcella had demonstrated the absence of a genuine dispute of a material fact as to his personal involvement in the alleged use of excessive force by Hughes.  The motion for summary judgment is granted on that ground.

---

decision, the court applies the categories outlined in Colon.

## II.  Hughes - Excessive Force

Hughes states that the force that he used was necessary to restore discipline due to Spence's resistance to his order to come to the trap door to be handcuffed and was not intended for the purpose of causing Spence pain or harm.

In Hudson v. McMillian, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment, in contexts other than prison disturbances.  When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim.  See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

To meet the objective component, the inmate must allege that the defendant's conduct was serious enough to have violated "contemporary standards of decency."  Hudson, 503 U.S. at 8 (internal quotation marks and citation omitted).  The extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component.  See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) ("core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was

applied given the circumstances).

The subjective component requires the inmate to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7 (citing Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotations and citation omitted).

Hughes contends that the force used, a single burst of a chemical agent towards Spence's facial area through the trap in Spence's cell door, was not excessive in view of the circumstances known to him at the time. Hughes states that prior to August 17, 2018, Spence had indicated that he would not make it easy for correctional officials to attempt to transfer him from Garner to another facility. Hughes Decl. ¶ 5, Doc. No. 20-1. On August 17, 2018, after Hughes informed Spence that he was going to be transferred from Garner and that he needed to place his wrists in the trap of the cell door to be handcuffed, Spence stated he would be "going all the way" and that

12

correctional officers would need to forcibly remove him from the cell.  Id. ¶ 6.  As Spence started to cover his face with his shirt to from the effects of a chemical agent, Hughes deployed a one second burst of a chemical agent through the trap in the direction of Spence's face because Spence had failed to comply with his order and in an effort to avoid further escalation of the situation and possibly expose Spence and other officers who might have to extract Spence from the cell from a risk of injury.  Id. ¶¶ 6, 10.

During the videotape depicting Spence's conversation with a mental health physician at Garner, after he had been removed from the cell, escorted to the admitting and processing area and prepared for transfer, Spence explains that he had "flipped the f*** out" when he learned from Hughes that he would be transferred to another facility.  He states that the physician and other mental health providers had failed to give him any advance notice that they had decided that he no longer required the type or level of mental health treatment that was available at Garner and that a transfer to another facility was necessary. See Ex. H, DVD, Aug. 17, 2018, at 28:00 – 28:20.  Captain Hughes contends that Spence's characterization of his behavior, as "flipping the f*** out," suggests that he resisted or refused to comply with the initial order to be handcuffed and removed

from his cell and that the nature of his behavior necessitated a use of force to gain his compliance with the order.  Id.

Captain Hughes also points out that Spence did not allege that the chemical agent reached his face or body.  During the videotape of Spence's escort to the shower to be decontaminated, Spence states that the chemical agent did not reach his face. See Ex. H, DVD, Aug. 17, 2018, at 9:11 – 9:32.  The fact that Spence did not exhibit symptoms of having been physically harmed by the chemical agent suggests that the amount of force used by Captain Hughes, one burst of the chemical agent, was not excessive.  See Wilkins, 559 U.S. at 37 ("The extent of injury may also provide some indication of the amount of force applied.")

The court concludes that Hughes has met his burden of demonstrating the absence of a genuine dispute as to material fact regarding his minimal use of force against Spence, in an effort to restore discipline or order, rather than to cause Spence injury or harm. Hughes is entitled to judgment as a matter of law on the Eighth Amendment claim and, therefore, the motion for summary judgment is granted on that ground.[4]

---

[4] Because the court has granted the motion for summary judgment on this ground, it need not reach Captain Hughes' argument that he is entitled to qualified immunity.

14

## CONCLUSION

The defendants' motion for summary judgment, [**ECF No. 20**], is **GRANTED.**  The clerk is directed to enter judgment for the defendants, Hughes and Corcella, and to close the case.

SO ORDERED at Hartford, Connecticut this 29th day of September, 2020.

```
_____/s/_____
Alfred V. Covello
United States District Judge
```